**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GREGORY A. IDLEBIRD, DERRICK** | § | |
| **JACKQUET, LINDA JOHNSON, and** | § | |
| **ROBERT WHITSEY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Action No. H-03-3439** |
| **XEROX CORP.,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM AND ORDER**</u>

The following motions are pending in this case: Defendant's Motions for Summary Judgment (Docket Entry Nos. 24, 25, 26, and 27) and Plaintiffs' Second Motion To Extend Deadline To File Response and Opposition to Defendant's Motion for Summary Judgment (Docket Entry No. 31). For the reasons that follow, Plaintiffs' Motion (Docket Entry No. 31) is **GRANTED** and Defendant's Motions (Docket Entry Nos. 24, 25, 26, and 27) are **GRANTED**. All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**I.     <u>Background</u>**

Each Plaintiff alleges race and color discrimination, as well as retaliation, pursuant to Title VII and 42 U.S.C. § 1981. Plaintiff Johnson also asserts a claim of sex discrimination. All Plaintiffs are African-American and filed charges with the EEOC in March of 2001.

<u>**Plaintiff Idlebird**</u>

Mr. Idlebird was hired by Defendant on April 9, 1990. He currently works as an Account Associate assigned to the American General Account in Houston.

1

**Plaintiff Jackquet**

Plaintiff Jackquet was hired by Defendant as a temporary employee in April of 1999.  In October of 1999, Plaintiff Jackquet was hired as a permanent employee.  He worked for 19 months before voluntarily resigning on May 28, 2001.

**Plaintiff Johnson**

Plaintiff Johnson initially worked as a temporary employee and was later hired as a regular employee in October of 1999.  Plaintiff Johnson was on long-term disability leave starting in 2001 due to glaucoma.  She was recently terminated because she was no longer qualified for long-term disability.

**Plaintiff Whitsey**

Plaintiff Whitsey currently works as an Account Associate assigned to the Harris County Hospital District Account.  He was hired by Defendant on January 9, 1995.

## II.    Discussion

*A.  Plaintiffs' Second Motion To Extend Deadline*

Plaintiffs' Motion is **GRANTED**.  The Court has considered Plaintiffs' Responses and the accompanying evidence when deciding Defendant's Motions for Summary Judgment.

*B.  Legal Standard for Motions for Summary Judgment*

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th

Cir. 2001) (citations omitted).  Evidence is construed in the light most favorable to the non-moving party.  *Id.*  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citations omitted).  This Court may grant summary judgment on a claim if Defendant can show that Plaintiff has failed to establish the existence of any of the essential elements of a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

   C.  *Plaintiff Idlebird's Claims*

Plaintiff Idlebird's claims center around the following:

1.  Denial of pay raises in 1992 and 1998

2.  Denial of training opportunities in 1994 and 1996

3.  Wrongful denial of advanced compuset training

4.  Failure to place Plaintiff in a lead position in April of 2004

5.  Hostile work environment

6.  Removal from lead position in July of 2001 after Plaintiff filed his EEOC charge

   The Court held a status conference to discuss Defendant's Motions.  In that conference, Plaintiff conceded that the denial of pay raises in 1992 and 1998 as well as the denial of training opportunities in 1994 and 1996 are time-barred.  As for the denial of compuset training, such an act is not an adverse employment action. *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995).  Plaintiff's claim that Defendant failed to place him in a lead position in July of 2004 arose after this lawsuit was filed, and was never the subject of an EEOC charge.  As Plaintiff has not

amended his complaint to include this alleged act of discrimination, the Court will not consider it.  Therefore, only numbers 5 and 6 warrant further discussion.

To make out a prima facie case of hostile work environment, a plaintiff must allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment in question and failed to take prompt remedial action. *Celestine v. Petroleos de Venezuela, S.A.*, 266 F.3d 343, 353 (5th Cir. 2001) (citations omitted).  In order to affect a term, condition, or privilege of employment, the harassment must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

Plaintiff Idlebird's hostile work environment claim involves a joke book that was compiled by colleagues and passed around his Xerox facility.  The parties agree that the book was an equal opportunity offender that targeted almost any group imaginable, from African-Americans to blondes.  The exact date at which the book ceased to exist is disputed.  It is possible that the book has not existed since 1999.  Defendant makes numerous arguments to support its contention that Plaintiff cannot make out a prima facie case of a hostile work environment.  The Court need only entertain one.  Though the joke book was in extremely poor taste, and Defendant's alleged tolerance of it is shameful, the harassment simply was not sufficiently severe or pervasive.  As the Fifth Circuit has said "[w]hether an environment is hostile or abusive depends on a totality of the circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably

interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Conduct that sporadically wounds or offends but does not hinder performance is not actionable. *Id.* (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d  591, 593 (5th Cir. 1995)).  The Court does not intend to downplay the effects of such a joke book; however, Plaintiff's deposition testimony suggested that the book at most sporadically wounded or offended, without any suggestion that it hindered his job performance.

Plaintiff's final claim involves his removal from a lead position in 2001.  Defendant says that the account that Plaintiff had been working on at the time, the Nylcare account, was shut down and that Plaintiff was moved to the American General account, which had no lead position available.  Plaintiff's supervisor on the American General account was African-American and liked Plaintiff. He asked Plaintiff to come and work temporarily on the American General account because he valued Plaintiff's work.  Plaintiff never applied for any other lead positions.

Plaintiff alleges that this demotion was in retaliation for the filing of his EEOC complaint in March of 2001.  If that is the case, then Plaintiff failed to exhaust his administrative remedies as to his Title VII claim.  In addition, Plaintiff does not allege that the person who made the decision to send him to the American General account was aware of his EEOC complaint.  Nor has Plaintiff shown that he was replaced with someone outside the protected class because he does not challenge Defendant's assertion that the account he was working on was shut down. Even if Plaintiff could make out a prima facie case, Defendant has offered a legitimate, non-discriminatory reason for its decision.  The burden then shifts to Plaintiff to show pretext. However, Plaintiff has failed to raise an issue of material fact as to pretext because all that he has offered to show that he was discriminated against is his own subjective belief that this was the

case.  This is not sufficient. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (citing cases).

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff Idlebird's Claims (Docket Entry No. 26) is **GRANTED**.

D. *Plaintiff Jackquet's Claims*

Plaintiff Jackquet's claims center around the following:

1.  Denial of a requested pay increase in June of 2000

2.  Denial of a training request in November of 1999

3.  Denial of transfer stemming from June 2000 reorganization

4.  Denial of transfer in November of 2000

5.  Denial of request to change work schedule

6.  Disciplinary probation issued in March of 2001 for alleged performance deficiencies

7.  Written warning issued in November of 2000

8.  Training of co-worker to help Plaintiff with his duties

9.  Hostile work environment

10. Retaliation

Numbers 2, 5, 7 and 8 are not adverse employment actions and are therefore not actionable. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707-09 (5th Cir. 1997).  Number 2 is also time-barred under Title VII.  In addition, Plaintiff stated in the status conference that he was abandoning number 5. As for number 1, Plaintiff explicitly stated in his deposition that he did not think he was denied the pay increase because of his race.  In addition, Plaintiff eventually did get the raise.  Plaintiff also cannot complain about being placed on probation in March of 2001 because Defendant investigated the charges, rescinded the probation, and subsequently treated

Plaintiff as if he had never been placed on probation.  Plaintiff's retaliation claim seems to be based on the fact that he was placed on probation in March of 2001 after filing an EEOC charge. However, because the probation was rescinded, Plaintiff suffered no retaliation.  Plaintiff's hostile work environment claim is based on the fact that a manager called him a pimp because of the way Plaintiff dressed.  Plaintiff admitted in his deposition that he approached the person about the problem.  The person stated that he had been joking, but stopped making the comments after Plaintiff spoke with him.  Plaintiff cannot make out a prima facie case of a hostile work environment because, among other things, these comments were not sufficiently severe or pervasive.  Therefore, the only conduct that warrants further discussion is that described in numbers 3 and 4.

 At the outset, the Court must determine whether to apply the *McDonnell-Douglas* burden-shifting framework to Plaintiff's denial of promotion claims.  In his Response to Defendant's Motion for Summary Judgment, Plaintiff Jackquet mentions the fact that Defendant had a policy known as the balanced work force (BWF) program.  In *Frank v. Xerox Corp.*, the Fifth Circuit found that the existence of the BWF program was sufficient to constitute direct evidence of a form or practice of discrimination. 347 F.3d 130, 137 (5th Cir. 2003).  Plaintiff Jackquet did not submit any documentary evidence regarding the program and how it was implemented, which had been submitted by the plaintiffs in *Frank*, and did not base his claims on the existence of the program.  Nor is it clear from the record evidence that the BWF program even applies to existing employees.  In his deposition, Victor Chatman, who was a manager at Xerox while Plaintiff was employed there, first stated that he did not know whether the BWF program applied to promotions within Xerox, or only to new hires.  Later in the deposition, Mr. Chatman stated that the program did not have any impact on current employees of Xerox.  The

Court finds that Plaintiff Jacquet has not produced sufficient evidence to show that the BWF program applied to existing employees and therefore affected him. Therefore, the Court will apply the *McDonnell-Douglas* framework to Plaintiff's denial of promotion claims.[1]

With regard to the June 2000 re-organization, and assuming that Plaintiff can make out a prima facie case of discrimination, Defendant has offered a legitimate non-discriminatory reason, namely that Plaintiff was not as well qualified as those who were selected. Defendant has produced evidence that seven people were charged with choosing who would be selected for the thirteen available slots. Four of the seven people who were charged with making the selections were African-American. Five of the thirteen people selected were African-American, five were Caucasian, and three were Hispanic. The candidates were evaluated based on certain criteria and given a composite score by the seven members. Plaintiff's score placed him below all employees who were selected. Plaintiff has failed to produce any evidence to show that this process was a pretext for discrimination beyond his own subjective belief that this was the case. Therefore, this claim fails.

Plaintiff also complains about another position he failed to get that was instead awarded to Shirah McGarrah. However Defendant presented evidence that Plaintiff's application was not received in time and that his application was, therefore, not considered. Plaintiff said that he did not turn in the application to the designated person because that person was out of the office. He seems to suggest that someone intentionally failed to consider his application, but offers no proof of this beyond his own conjecture. The person in charge of selecting Ms. McGarrah also testified that, even had he received Plaintiff's application, he would have selected Ms. McGarrah

---

[1] This analysis applies to all Plaintiffs who make denial of promotion claims because none of Plaintiffs submitted any documents regarding the BWF program. Also, in their depositions, Plaintiffs Whitsey and Idlebird said that the BWF program had not affected them as far as they knew, and Plaintiff Johnson said that she was aware of no claims she has against Defendant based on the BWF program.

because she was better qualified.  Plaintiff said in his deposition that he knew nothing about Ms. McGarrah's qualifications.  Defendant has therefore produced a legitimate, non-discriminatory reason for its decision.  Plaintiff has produced no evidence of pretext beyond his own subjective belief of discrimination.  Therefore, summary judgment is warranted on this failure to promote claim.

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff Jackquet's Claims (Docket Entry No. 24) is **GRANTED**.

E.  *Plaintiff Johnson's Claims*

Plaintiff Johnson's claims center around the following:

1. Hostile work environment

2. Pay disparity

3. Failure to award merit increases

4. Favoritism in job assignments

5. Refusal to promote to lead ISR position when she was hired in October of 1999

6. Failure to promote to facilitator position sometime after the year 2000

7. Reassignment of her accounts payable duties

8. Placement on paid leave during investigation of an incident with a co-worker

9. Impermissible denial of disability benefits

10. Retaliation

Plaintiff's arguments with regard to numbers 4 and 7 fail because the acts complained of are not adverse employment actions.

Plaintiff Johnson's hostile work environment claims are based on the following events: (1) a supervisor's comment to "get the fuck out of my face," which occurred during or prior to

9

the fall of 1999; (2) a photograph of Plaintiff digitally altered to make her look like a prostitute and bearing the words "Five Dolla' Make Ya Holla,'" which occurred in the fall of 1999; (3) the spilling of soda on her desk by an unknown person in February of 2000; (4) sexually explicit emails sent in late 1999 and early 2000; (5) the phrase "blind bitch" written in the dirt on her car; and (6) an "open the door blind bitch" sign placed in Plaintiff's view at work.  Plaintiff claims she was subjected to a hostile work environment because of her race and sex.

There are multiple problems with Plaintiff's hostile work environment claims.  First, many of the events on which the claims are based are time-barred.  Second, none of the harassment seems to have been based on race and only two acts were arguably based on Plaintiff's sex.  The two acts that were arguably based on Plaintiff's sex are time-barred.  Furthermore, fellow employees also altered the photograph of a Caucasian male employee, and the sexually explicit emails were only some of a number of emails sent back and forth between members of Plaintiff Johnson's department.  They were not specifically directed at Plaintiff nor were they only targeted at women.  Even if all of this were not the case, however, the acts were not sufficiently severe or pervasive.  Plaintiff Johnson's hostile work environment claims therefore fail.

The Court will now discuss Plaintiff's pay disparity and merit increase claims.  These claims do not have merit because the other three people Plaintiff identified were all not similarly situated.  Defendant produced evidence that one employee was never awarded a merit increase, and Plaintiff actually earned more than one of the other employees she mentioned in her deposition.  In addition, one of the three employees is African-American.  Other women were also awarded merit increases.  Moreover, Plaintiff Johnson had exhibited well-documented performance problems up to that point and was not seen as qualified for a pay increase.

Plaintiff also complains that Defendant failed to promote her to a lead ISR position when she was hired in October of 1999.  First, this claim is time-barred under Title VII.  Secondly, Plaintiff's claim is further undermined by the fact that two of the lead ISRs at the time were African-American and one was female.  In addition, Defendant offered a legitimate, non-discriminatory reason for its decision.  Plaintiff had already had many performance problems and had shown that she could not handle her current duties.  Plaintiff Johnson failed to present any evidence, beyond her own subjective belief, that Defendant's decision was a pretext for discrimination.  Therefore, the claim fails.

Plaintiff also argues that she was denied a facilitator position sometime after the year 2000 because of her race.  Plaintiff did not make a formal application.  Rather she expressed her interest in the position.  According to Plaintiff, there were constantly openings for the position.  However, Defendant points out that Plaintiff's manager was African-American, and that a number of African-Americans worked as facilitators, including Plaintiff Jackquet.  Plaintiff makes a vague reference to other persons outside the protected group whom she claims were brought in as facilitators after she expressed her interest in the position; however, given that she cannot name a specific person, she cannot make out a prima facie case of discrimination.

Plaintiff claims that Defendant discriminated against her based on her race when they placed her on paid leave while Defendant investigated an incident between Plaintiff Johnson and a Caucasian employee, Renee Scott, on October 25, 2000.  Ms. Scott was sent home the day of the incident but does not appear to have been placed on leave.  Plaintiff also claims that Defendant discriminated against her by issuing her a final warning as a result of the incident.  One employee witnessed the entire incident, while one of Plaintiff Johnson's supervisors witnessed part of the exchange.  The employee who witnessed the entire incident confirmed Ms.

Scott's story that Plaintiff Johnson had used profanity and threatened Ms. Scott. An investigation into the matter was conducted by another African-American female, and Plaintiff Johnson was issued a final written warning. Neither being placed on paid leave nor the issuing of a final warning is an adverse employment action. Even were it assumed that they are, Defendant has given a legitimate, non-discriminatory reason for its decision to place Plaintiff Johnson on leave and issue a final written warning. Plaintiff's only evidence of pretext is her own belief that she was treated this way because of her race. This is not sufficient.

Plaintiff Johnson also claims that Defendant impermissibly denied her disability benefits. It seems that Plaintiff is arguing that she was denied disability benefits because of her race and sex. However, she has not shown that any other person outside the protected group was given disability benefits. Nor has she shown that Defendant was involved in the denial of the benefits. All but one denial was eventually resolved in Plaintiff's favor. As for the 2003 denial, Plaintiff admitted in her deposition that her claim was denied because she refused to see a doctor, as required by the insurance company.

Finally, Plaintiff argues that Defendant retaliated against her when it sent letters to employees warning them not to spend work time talking with other employees; when it issued her written warnings; when temporary employees told her she should not go to the press about Xerox; when one manager requested her medical records without her authorization; and when one supervisor told her to get her "ass" in her chair. However, none of these alleged retaliatory acts is an adverse employment action. Therefore, Plaintiff Johnson's retaliation claim fails.

For the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff Johnson's Claims (Docket Entry No. 25) is **GRANTED**.

F. *Plaintiff Whitsey's Claims*

Plaintiff Whitsey's claims center around the following:

1. Hostile work environment

2. Disparate treatment in disciplinary actions

3. Denial of training

4. Pay disparity

5. Retaliation during time at Nylcare account

6. Loss of lead pay

7. Wrongful denial of site management position

8. Having to train a fellow employee

9. Having another employee review his mailroom procedures

10. His assignment to the Torch Energy Account

11. Failure to be awarded a position in May of 2004

12. Written warning received in July of 2004

13. Retaliation claim involving later incidents

Many of Plaintiff's claims involve incidents that allegedly occurred while he was assigned to the Nylcare account.  Plaintiff cannot recall when he ceased to work on the Nylcare account.  Defendant has produced evidence that Plaintiff was transferred out of that account in June of 1999, which would make all of Plaintiff's claims related to the Nylcare account time-barred.  After reviewing the documents that Defendant has produced, the Court finds that they do not conclusively show that Plaintiff was transferred out of the Nylcare account in June of 1999. Therefore, the Court will assume that the acts complained of are not time-barred.

However, many of Plaintiff's claims are still without merit.  With regard to number 2, Plaintiff complains about verbal warnings for arriving late that he alleges that Caucasian

employees did not receive.  As verbal warnings are not adverse employment actions, Plaintiff cannot make out a prima facie case of discrimination as to the verbal warnings.  Being denied training is also not an adverse employment action.  The retaliation that Plaintiff alleges he suffered while he was at the Nylcare account also did not involve adverse employment actions. Plaintiff complains of verbal threats and the slamming down of a phone by his supervisor. Having to train another employee and having another employee review his mailroom procedures are likewise not adverse employment actions.  Finally, the alleged retaliatory acts Plaintiff complains of that occurred after he was transferred out of the Nylcare account did not involve adverse employment actions.

In his deposition, Plaintiff also mentions two incidents that occurred in 2004, after he filed his EEOC charge and after this case was filed.  Because Plaintiff did not amend his complaint to include these incidents, the Court will not consider them.  It is worth noting, however, that, with regard to number 11, Plaintiff complains about a position that he eventually received.  The conduct he complained of in number 12 is not an adverse employment action.

Plaintiff bases his hostile work environment claim on the following events: (1) a comment made by a manager in late 1999 that "where he came from, blacks knew their place;" (2) a comment by another manager that "there are lots of monkeys contaminating white blood," made after observing a Caucasian female holding hands with an African-American male; (3) racist materials downloaded from the internet by fellow employees in early 2000; (4) a comment by a manager that Defendant was paying Plaintiff too much money if Plaintiff was driving a Cadillac; and (5) a comment made to Plaintiff after he cut his finger on the job saying that Defendant did not want anyone getting injured on the job at least until the O.J. Simpson trial was over.

14

The comment made to Plaintiff during the O.J. Simpson trial is clearly time-barred because that trial concluded in 1995.  The comment made to Plaintiff about blacks knowing their place is time-barred for Title VII purposes.  It may also be time-barred under section 1981, depending on when in 1999 the comment was made.  In his deposition, Plaintiff admitted that the material being downloaded from the internet was not specifically targeted at African-Americans, but also involved women and Hispanics.  Lastly, Plaintiff has no personal knowledge that the comment as to monkeys was even made, because he was not present at the time.  He heard about the comment from another employee.  Though the conduct Plaintiff complains of is highly offensive, it is not sufficiently severe or pervasive to make out a prima facie case of a hostile work environment.

With regard to the alleged pay disparity, Plaintiff said in his deposition that the issue was resolved because he was given a pay raise.  Plaintiff also stated that he had no personal knowledge of what other employees were paid at the time.

With regard to number 6, Plaintiff said in his deposition that he thought that his loss of lead pay had nothing to do with his race.  The person who made the decision to transfer Plaintiff to a different account was African-American and asked Plaintiff to transfer because Defendant was in danger of losing the account.  Plaintiff did well at the account and agreed to stay.  Plaintiff also received a pay raise after six months, though he contended that that raise was in the works before his transfer.

Plaintiff also claims that he was wrongfully denied a site management position.  However, Plaintiff was told that the job posting was a misprint and that there were no openings for the position.  As a result, Plaintiff never applied for the position.  Also, he could not identify any other person who did get the position

Lastly, Plaintiff complains about his temporary assignment to the Torch Energy Account. Defendant claims that Plaintiff was sent there because they needed someone with his particular skill set in the mailroom.  Defendant says that it worked with Plaintiff to get him transferred as soon as it could find someone to take Plaintiff's place at the Torch Energy Account.  Plaintiff admitted in his deposition that he was transferred, but said that the new position was not ideal. However, Plaintiff said that he never applied for any of the positions in the account he said he was interested in because he was not interested in the individual positions.

For the foregoing reasons, none of Plaintiff Whitsey's claims has merit.  Therefore, Defendant's Motion for Summary Judgment on Plaintiff Whitsey's Claims (Docket Entry No. 27) is **GRANTED**.

### III.   Conclusion

Plaintiffs' Motion (Docket Entry No. 31) is **GRANTED** and Defendant's Motions (Docket Entry Nos. 24, 25, 26, and 27) are **GRANTED**.  All of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 16th day of August, 2005.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**